IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MICHELLE LANE, et al. | ) Case No. 1:11-CV-503-GBL/TRJ |
| Plaintiffs, | ) DECLARATION OF<br>) MICHELLE LANE |
| v. | ) |
| ERIC HOLDER, et al., | ) |
| Defendants. | ) |

## DECLARATION OF MICHELLE LANE

I, Michelle Lane, am competent to state and declare the following based on my personal knowledge:

1. I currently reside in the District of Columbia.

2. I am over the age of 21, am not under indictment, have never been convicted of a felony or misdemeanor crime of domestic violence, am not a fugitive from justice, am not an unlawful user of or addicted to any controlled substance, have not been adjudicated a mental defective or committed to a mental institution, have not been discharged from the Armed Forces under dishonorable conditions, have never renounced my citizenship, and have never been the subject of a restraining order relating to a child or an intimate partner. I hold a valid Utah permit to carry a concealed handgun.

3. On April 23, 2011, I ordered two handguns from a licensed federal firearms dealer in Lorton, Virginia: a Kahr K9 Elite, and Ruger LCR. (The complaint in this case read April 25 as the date on which I ordered the handguns, but the correct date is April 23). Prior to purchasing these handguns, I verified with the District of Columbia's Metropolitan Police Department that

both handguns were legal for me to possess in the District of Columbia, as I intend to do for home self-defense. I am fully qualified to register a handgun in the District of Columbia, and in fact, had previously done so, but I found that particular handgun uncomfortable to use and do not believe it would be useful to me in case of an emergency.

4. In compliance with the law, I asked that the Lorton gun dealer transfer the handguns, upon their arrival, to Charles Sykes. I understood from my dealings with the Metropolitan Police Department that Sykes is the only licensed District of Columbia gun dealer who could then transfer me the handguns. I understood that Sykes would charge me $125 per handgun to accomplish the transfer.

5. On April 28, 2010, Charles Sykes contacted me. Sykes told me he was forbidden from accepting any more handguns for transfer to District residents because he had lost his lease.

6. I find it burdensome and expensive to make multiple trips between gun stores outside the District of Columbia, the police station, and Sykes's office (or any other location to which he would move) inside the District, just to purchase a handgun. I also find it burdensome and expensive to pay the costs of transferring guns from the out-of-District stores to Charles Sykes, and then to pay Sykes's $125 transfer fee, just to buy a handgun.

7. But for the various rules and regulations that forbid me from doing so, I would take possession of the two handguns I had ordered directly from the Lorton store. I would comply with all other federal, state, and District firearms transfer laws, including the mandatory background check, and register my handguns in full compliance with District of Columbia law. Additionally, in the absence of restrictions on the acquisition of handguns from out-of-state, I would participate more frequently in the market for handguns.

8.    I also understand that in order to complete the acquisition of these handguns, I must fill out a form on which I declare my state of residence, the District of Columbia being considered a state for these purposes. I am unwilling to provide a false answer on that form.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 17 day of June, 2011.

_____
Michelle Lane