**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

**MICHELLE LANE, et al.,**

      **Plaintiffs,**

v.                                                      Case No. 1:11-CV-503 – GBL/TRJ

**ERIC HOLDER, Attorney General
of the United States, et al.,**

      **Defendants.**

**SUPERINTENDENT'S OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION**

COMES NOW the Defendant, W. STEVEN FLAHERTY, Superintendent of the Virginia State Police, by counsel, pursuant to Fed. R. Civ. P. 65 and Local Rule 7, and files his Opposition to the Plaintiffs' Motion for Preliminary Injunction previously filed in this matter.  In furtherance of said opposition, the Defendant states as follows.

**PROCEDURAL POSTURE**

Plaintiffs Michelle Lane ("Lane"), Mathew Welling and Amanda Welling ("the Wellings"), and Second Amendment Foundation, Inc. ("SAF"), have filed suit against the Defendant, challenging the constitutionality of  Virginia Code § 18.2-308.2:2.[1]

Plaintiffs Lane and the Wellings each contend that they are residents of the District of Columbia ("D.C."), and wish to take possession of certain handguns.  Lane has

---

[1] They also challenge the constitutionality of 18 U.S.C. § 922(b)(3), 27 C.F.R. § 478.99, and District of Columbia Municipal Regulation 24-2320.3(b) and (f).  In that regard, they name Eric Holder, the Attorney General of the United States, and the District of Columbia as Defendants.

placed an order for two handguns from a Virginia firearms dealer, while the Wellings wish to take possession of a firearm being gifted to them by a family member who resides in Texas. The Wellings wish to utilize a Virginia firearms dealer to consummate this transfer. Plaintiffs allege that by operation of the Virginia statute – as well as by operation of federal law – a Virginia firearms dealer cannot convey possession of a handgun purchased from that dealer to a non-resident purchaser directly.[2] Rather, a Virginia firearms dealer must transfer that handgun to another firearms dealer located in the purchaser's home state – in this instance D.C. – then his home state dealer would convey possession of the handgun to him. According to the Plaintiffs, the only federally licensed firearms dealer operating in D.C. has recently lost his lease and, therefore, cannot act as a lawful conduit for the purchase of handguns by Lane, or the transfer of the gifted firearm to the Wellings.

Plaintiffs filed an Amended Complaint in which they challenge Va. Code § 18.2-308.2:2 as unconstitutional in that it bans and otherwise burdens "access to handguns whose possession is protected by the Second Amendment." Complaint, ¶ 31. They also challenge the statute on the basis that it "improperly classifies individuals according to their residence status in violation of the Fourteenth Amendment right to equal protection of the law." Complaint, ¶ 33.

Plaintiffs also filed a Motion for Preliminary Injunction. In what must be taken as an attempt to narrow the focus of the underlying constitutional challenge, and recognizing that Va. Code § 18.2-308.2:2 deals with a number of requirements and

---

[2] Handgun is defined as "any pistol or revolver or other firearm originally designed, made and intended to fire single or multiple projectiles by means of an explosion of a combustible material from one or more barrels when held in one hand." *See* Va. Code § 18.2-308.2:2(G).

prohibitions relating to the acquisition and transfer of firearms, Plaintiffs indicate that they do not challenge the entire statute.  They assert that "[t]he relief sought by Plaintiffs is exceedingly narrow.  Plaintiffs are *not* asking to be excused from compliance with background checks or local gun control schemes."  Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, at 7, (hereafter "P. PI. Memo at __") "*Plaintiffs only seek to have handgun sales be subject to the same restrictions already in place for rifles and shotguns.*"  *Id.* (Emphasis added).[3]

## STATUTORY SCHEME

As relevant to these proceedings, Va. Code § 18.2-308.2:2(A) requires a person purchasing a firearm[4] from a firearms dealer doing business in Virginia to "consent in writing, on a form to be provided by the Virginia State Police ("VSP"), to have the dealer obtain criminal history record information [about that purchaser]."  That statute also requires the dealer to obtain a variety of information about the purchaser, including "name, birthdate, gender, race, citizenship, and social security and/or any other identification number and the number of firearms by category intended to be sold, rented, traded or transferred . . . ."  *See* Va. Code § 18.2-308.2:2(B)(1).  That sub-section goes on to prohibit a firearms dealer from selling, renting, trading or transferring a firearm from his inventory, without first having obtained the consent described above and the information about the purchaser, and having submitted that information to the VSP for their review and evaluation.  *Id.*

---

[3] Curiously, Plaintiffs' Complaint also alleges "Plaintiffs reasonably fear arrest, prosecution, incarceration and/or fine if they were to provide false state residence information on a Form 4473 in order to obtain a handgun, and they are unwilling to provide any false information on any government form."  Complaint, ¶ 22.

[4] "Firearm" is defined as "any handgun, shotgun, or rifle . . . ."  *See* Va. Code § 18.2-308.2:2(G).

Once the information is transmitted to the VSP, the VSP is required to "(1) review its criminal history record information to determine if the buyer or transferee is prohibited from possessing or transporting a firearm by state or federal law, [and] (2) inform the dealer if its record indicates that the buyer or transferee is so prohibited . . . ." Except in certain enumerated circumstances, a firearms dealer can only complete the sale or transfer after having received authorization from the VSP. *See* Va. Code § 18.2-308.2:2(B)(1) and (2). These requirements apply in all transactions involving any type of firearm, whether that firearm is a rifle, shotgun, or handgun.

As Plaintiffs correctly observe, while Virginia law permits the sale or transfer of a rifle or shotgun to a non-resident of Virginia, *see* Va. Code § 18.2-308.2:2(B)(5), a Virginia firearms dealer is prohibited from selling or transferring a handgun to a non-resident of Virginia. *See* Va. Code § 18.2-308.2:2(C). As Plaintiffs also correctly observe, the sale or transfer of a handgun to a non-resident of Virginia can only be accomplished by utilizing the services of a firearms dealer in the purchaser's home state acting as a "middle-man" in the transaction.[5]

With this statutory framework in mind, Plaintiffs ask this Court to strike down the Virginia statute and to enjoin its application to the extent that it prohibits the direct sale of handguns to non-residents, and to do so *post haste,* in advance of a hearing on the merits. Not only is Plaintiffs' request for accelerated relief unsupported under the law, but the entire premise of their constitutional challenge is flawed.

---

[5] 18 U.S.C. § 922(a)(3) permits a licensed firearms dealer to receive a firearm from an out-of-state licensed firearms dealer. Significantly, it is that firearms dealer in the purchaser's home state who performs the background check required by federal law and their own state law. *See* Affidavit of Donna Tate, Program Manager for the Firearms Transaction Center of the VSP, ¶ 30 (hereafter "Tate Aff. ¶ __").

Plaintiffs' motion for preliminary injunction should be denied.

## ARGUMENT

**I. Standard of Review**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 376 (2008), citing *Munaf v. Geren*, 553 U.S. 674, 689 (2008). "Federal decisions have uniformly characterized the grant of interim relief as an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances which clearly demand it.'" *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 811 (4th Cir. 1991).

Moreover, one must be mindful that "[t]he traditional office of a preliminary injunction is to protect the status quo . . . ." *Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517, 525 (4th Cir. 2003). "Mandatory preliminary injunctions [such as Plaintiffs seek here, however,] do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). In that regard, "a mandatory preliminary injunction is granted even more rarely than a prohibitory injunction . . . [and] [a] plaintiff who is seeking to change the status quo must make an even higher showing in order to obtain a preliminary injunction."). *Russell v. Merrill Lynch, Inc.*, 2009 U.S. Dist. LEXIS 74642, at *2-3 (M.D.N.C. Aug. 20, 2009) (Citations omitted). *Accord, River's Edge Pharms., LLC v. Gorbec Pharm. Servs.*, 2011 U.S. Dist. LEXIS 29486, at *9-10 (M.D.N.C. Mar. 22, 2011). A similar elevated showing of a right that is "indisputably clear" applies to preliminary injunctions during the pendency of an appeal. *Lux v. Rodrigues*, 131 S. Ct. 5, 6 (2010) ("Circuit Justice's

issuance of an injunction 'does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts,' and therefore 'demands a significantly higher justification' than that required for a stay.") (Citation omitted).

In order to prevail on a request for a preliminary injunction, a plaintiff must "establish [1] that he is *likely* to succeed on the merits, [2] that he is *likely* to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374 (Emphasis added). All four requirements must be satisfied. *Id*.  In addition, the irreparable harm cannot be remote, or speculative, but must be actual and imminent. *Direx Israel, Ltd.*, 952 F.2d at 812.  Without a showing that plaintiff will suffer imminent irreparable harm, the court cannot grant interlocutory injunctive relief.  *Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.2d 353, 360 (4th Cir. 1991).  Finally, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

As set forth below, Plaintiffs have not and cannot meet these requirements.

**II.     Likelihood of suffering irreparable harm in the absence of preliminary relief**

As observed by the Supreme Court in *Winter*, 129 S. Ct. at 375, "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction." (Emphasis added).  "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of

6

injunctive relief as an extraordinary remedy that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." *Id.* at 375-76 (Citation omitted) (Emphasis added).

In the instant case, Plaintiffs contend that their Second Amendment rights are violated by virtue of Virginia's statute prohibiting a Virginia firearms dealer from completing a direct sale or transfer of a handgun to a non-resident. They also contend their rights under the equal protection clause of the Fourteenth Amendment are being abridged by this statutory scheme. They fail to state with any specificity, however, how this prohibition causes them imminent and irreparable harm.

Insofar as Lane is concerned, she indicates that she has purchased two handguns from a Lorton, Virginia, firearms dealer, but cannot take possession of those handguns due to the absence of a D.C. firearms dealer needed to complete the sale. She states that she purchased the handguns for self-defense. Lane Dec. ¶¶ 3-4. The Wellings indicate that there have been instances of non-violent crime in their neighborhood (burglaries from several homes, and thefts from their car and patio), A. Welling Dec. ¶ 3; M. Welling Dec. ¶ 3, which is the reason they wish to take possession of the firearm offered by Mrs. Welling's father. SAF, on the other hand, alleges that "SAF's resources are taxed by inquiries into the operation and consequence of interstate handgun transfer prohibitions." SAF Dec. ¶ 4.

The "harms" the Plaintiffs complain about are neither imminent nor irreparable. While it is true that Lane cannot take immediate possession of the two handguns she has ordered, she fails to allege that her life activities are in any manner diminished by failing to have possession of these handguns at this time, as opposed to at the termination of this

7

litigation should Plaintiffs prevail. While she does allege that she purchased the handguns for self defense, she does not contend that there is an imminent threat to her were she not to take possession of the handguns immediately.[6] Lane Dec. ¶ 3. The Wellings, on the other hand, while indicating that there is some low level criminal activity afoot in their neighborhood (burglaries and thefts), do not indicate that violent crime is rampant or that it threatens their safety directly. Simply put, Lane and the Wellings' allegations fail to demonstrate the immediate need for the firearms they wish to obtain. Nor do they demonstrate a resultant imminent harm from not possessing them now as opposed to at the termination of this litigation.[7]

Insofar as SAF is concerned, the only injury it claims is that "SAF's resources are taxed by inquiries into the operation and consequences of interstate handgun transfer prohibitions." Versnel Dec. ¶ 4. SAF fails to identify the extent of its resources which are utilized in answering these questions, let alone whether they relate to questions directed at Virginia and its statutory scheme specifically. Furthermore, reviewing both the Complaint and Versnel's affidavit, it appears that SAF has failed to demonstrate that

---

[6] Lane indicates that she made the purchase of these two handguns on April 23, 2011. A cynic might suggest that she did so in order to establish standing for this case. In any event, she obviously would have known at the time of the purchase that absent a D.C. firearms dealer with which to consummate the sale, she could not take possession of the firearms. Moreover, she should also have been aware that according to Virginia law, she could not purchase more than one handgun in any 30-day period, absent having undergone an enhanced background check, which she has not alleged she could pass. *See* Va. Code § 18.2-308.2:2(P). Finally, while her declaration is less than clear on the point, Lane already appears to own a handgun, although she "finds it uncomfortable to use and do[es] not believe it would be useful to me in case of an emergency." Lane Dec. ¶ 3.

[7] Significantly, the Wellings have not even identified a Virginia firearms dealer who would be ready, willing, and able to act as the conduit for the transfer of the firearm from Mrs. Welling's father in Texas, so that they would even be in a position to complain about the statutory scheme in place.

any of its members has standing to sue, or that it has standing in its own right. Therefore, SAF has not demonstrated standing.[8]

In short, Plaintiffs have failed to demonstrate how an injunction would prevent imminent and irreparable harm to them in the short term. Consequently, a preliminary injunction at this stage would be premature and unwarranted.

### III.     Injunction and the public interest

Plaintiffs' allegations do not demonstrate that entry of a preliminary injunction at this stage of the proceedings is in the public interest. As observed by the Virginia Court of Appeals:

> It is manifest that Code § 18.2-308.2:2 is a part of a statutory scheme reflecting a legislative purpose to interdict the availability and use of firearms by persons previously convicted of felony offenses. That purpose finds its justification from the lessons of common experience that possession of firearms by felons presents a high risk of harm to others.
>
> To facilitate the accomplishment of this general purpose, the statutory scheme prohibits the possession of a firearm by a convicted felon, Code § 18.2-308.2, the knowing sale or provision of a firearm to a convicted felon, Code § 18.2-308.2:1, and the purchase of a firearm by a "straw man" for the ultimate possession by a convicted felon, Code §§ 18.2-308.2:2(M) and (N). *We may reasonably assume that duly licensed firearms dealers are the primary source of firearms lawfully sold, purchased and possessed by others in our society.* Such dealers are defined in Code § 18.2-308.2:2(G). *Accordingly, the sale or transfer of firearms by firearms dealers presents the logical and reasonable point to interdict the availability of firearms to convicted felons.* Thus, Code § 18.2-308.2:2 provides in general terms the procedures to be followed by a

---

[8] In order to establish organizational standing, three elements must be met: "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (Internal citations omitted).

> firearms dealer to secure a criminal history record check to verify that a potential customer is not a convicted felon and not permitted to possess a firearm. Code §§ 18.2-308.2:2(B) and (C). Where the licensed firearms dealer fails to make the required criminal history check, Code § 18.2-308.2:2(L) provides that: Except as provided in § 18.2-308.2:1 [prohibiting any person from knowingly selling a firearm to a person prohibited from possessing a firearm], any dealer who willfully and intentionally sells, rents, trades or transfers a firearm in violation of this [Code] section shall be guilty of a Class 6 felony.

*Mayhew v. Commonwealth*, 20 Va. App. 484, 490-92 (1995) (Emphasis added).

Furthermore, when performing the necessary background checks pursuant to its duty under Va. Code § 18.2-308.2:2(B)(1) and (2), the VSP does not have ready access to the necessary information about a non-resident by which to determine whether that non-resident who is seeking to purchase a handgun in Virginia is prohibited from doing so by the laws and regulations of his home state. That applies whether his home state is California, D.C., or any other state. Tate Aff. ¶ 23. Not so with a resident of Virginia. Tate Aff. ¶ 21. While the VSP is made privy to some computerized information from other states, much of the necessary information about a non-resident's background is not automated, and therefore is not readily accessible to the VSP. The VSP does not have ready access to the full panoply of information from each state, or from D.C., which might identify a particular disqualifier which would prohibit a non-resident's possession of a handgun. Tate Aff. ¶ 23. Consequently, assuming that a non-resident attempted to purchase a handgun from a Virginia dealer, the VSP could not conduct an appropriate background check in order to accurately approve an application for a handgun for a non-resident in the time available to do so under state and federal law. Tate Aff. ¶ 25. Under such circumstances, were the ban on sales of handguns to non-residents enjoined by this Court, non-residents from any number of states would be able to purchase handguns in

the Commonwealth where ordinarily they might be precluded from doing so if a full background check were possible. Tate Aff. ¶ 29.[9]

It must be noted that the statutory scheme under challenge has been in place for the past 20 years. Firearms dealers, the VSP, and citizens of the Commonwealth understand what is required of them, and what is prohibited. While Plaintiffs argue that the statute fails to pass constitutional muster, and the Superintendent argues the converse, the decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), fails to categorically call for the dismantling of the system that is in place. In fact, the language in *Heller* suggests the opposite. With the foregoing in mind, the public interest would certainly be better served if full briefing on the merits of the issues presented were permitted, and this Court was afforded an opportunity to consider the arguments of the parties before rendering a decision which might have enormous impact and far reaching consequences on the citizens of the Commonwealth.

For this reason, Plaintiffs' request for preliminary injunction should also be denied.

## IV.  Balance of equities

If this Court were to balance the equities in this case – that is, a continued prohibition on the ability to complete the sale/transfer of the handguns in question – at least for the short term, versus the court ordered disassembly of a complex statutory scheme designed to prevent felons and other undesirables from obtaining firearms, it is

---

[9] Under those circumstances, nothing would prevent those non-residents from then transferring those handguns to persons who also would not be otherwise entitled to possess them, or worse yet, to be in a position to use those handguns in criminal enterprises in Virginia or back in their home state.

manifest that the equities tip dramatically in favor of maintaining the status quo at this time.

**V.  Likelihood of success on the merits**

In the landmark *Heller* decision, the Court interpreted the Second Amendment to the Constitution of the United States as guaranteeing an individual right to possess a firearm, unconnected with service in the militia, and to use that firearm for what it viewed as traditionally lawful purposes. The Court also stated, "[l]ike most rights, the right secured by the Second Amendment is not unlimited . . . . [T]he right . . . [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . ." *Id.* at 626.[10]  Moreover:

> [a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, *or laws imposing conditions and qualifications on the commercial sale of arms.*

*Id.* at 626-27. Parenthetically, the Court went on to say "[w]e identify these *presumptively lawful regulatory measures* only as examples; our list does not purport to be exhaustive." *Id.* at 627, n.26. (Emphasis added). This language is significant because the *Heller* Court went on to state later in its opinion that

> [w]e are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many *amici* who believe that prohibition of handgun ownership is a solution.  The Constitution leaves the District of Columbia a variety of tools for combating that problem, *including some measures regulating handguns, see supra, at 626-627, and n.26* . . . .

---

[10] One example in *Heller* demonstrating such a limitation is the Court's observation that "[t]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625.

12

*Id.* at 636 (Emphasis added). The repeated references surely demonstrate the Court's implicit, if not explicit, acceptance of the *presumptively lawful regulatory measures* identified earlier, including *regulation of commercial activities surrounding the sale and transfer of firearms*. [11]

The Fourth Circuit post-*Heller* has also concluded that the scope of the Second Amendment is not unlimited. *See United States v. Masciandaro,* 638 F.3d 458 (4th Cir. 2011) (affirming conviction for possession of a loaded firearm in a national park pursuant to 36 C.F.R. § 2.4(b));[12] *United States v. Brunson*, 292 Fed. Appx. 259, 261 (4th Cir. 2008) (unpublished opinion) (affirming defendant's conviction under 18 U.S.C. § 922(g)(1), for possession of a firearm by a felon); *United States v. Chafin*, 2011 U.S. App. LEXIS 7713 (4th Cir. W. Va. Apr. 13, 2011) (unpublished opinion) (affirming conviction for selling a firearm to a person knowing or having reasonable cause to believe that such person was an unlawful user of drugs in violation of 18 U.S.C. § 922(d)(3)).

Other circuits have spoken as well, finding various criminal statutes legitimate in the face of Second Amendment challenge. *See e.g. United States v. Portillo-Munoz*, 2011 U.S. App. LEXIS 11976 (5th Cir. 2011) (affirming conviction of illegal alien for unlawful possession of firearm pursuant to 18 U.S.C.S. § 922(g)(5)); *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (affirming conviction under 18 U.S.C.S. § 922(g)(9)

---

[11] Significantly, the Supreme Court stopped short of "providing extensive historical justification for those regulations [which it] describe[d] as permissible." *Id.* at 683. Nor did it define what standard of constitutional scrutiny needed to be utilized in assessing the validity of these regulations. Rather, the Court stated, "since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field . . . ." *Id.*

[12] In arriving at its decision, the Court utilized an intermediate level of scrutiny in assessing the constitutionality of the regulation. *Id.* at 474.

for possession of a shotgun after convictions for misdemeanor crimes of domestic violence); *United States v. Seay*, 620 F.3d 919 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 1027 (2011) (affirming conviction for possession of a firearm while being an unlawful user of, or addicted to, a controlled substance, in violation of 18 U.S.C.S. §§ 922(g)(3)).

Not only is the regulation presumptively valid, and not only have similar laws been repeatedly upheld, but the state interest involved obviously satisfies intermediate scrutiny. If it is constitutionally permissible to prohibit the possession of handguns by felons and those with other disqualifications, it surely is constitutionally permissible for states to impose limited regulation on the sale of those handguns, in order to ensure that they do not fall into the hands of that prohibited population.[13]

---

[13] Plaintiffs allege "Virginia will allow a non-resident to do just about anything with a handgun that its own residents might do, except take delivery of one," P. Pl. Memo at 4, in order to support their argument that the statutory scheme is unconstitutional. Plaintiffs' point misses the mark. While it is true that Virginia permits non-residents to carry handguns openly, or to obtain concealed handgun permits, the Virginia statute under attack is designed to prevent a disqualified non-resident from obtaining a firearm in the first place. Any Virginia regulation governing how that non-resident can conduct himself while armed, *after he has legally obtained possession of a handgun*, is quite a different issue. Having demonstrated that they are not disqualified from owning a handgun pursuant to their own home state's background check, Virginia is well within its authority to permit a non-resident certain rights under state law to carry that handgun after the fact. Similarly, any differences in the ability of a non-resident to purchase a rifle or shotgun versus a handgun is also constitutionally permissible. In that regard, the evidence is overwhelming that while rifles and shotguns comprise the majority of firearms that are owned in this country, handguns are responsible for more than 86% of all gun crimes, and 57% of all murders are committed with a handgun, versus 3% with a rifle, and 5% with a shotgun. Marianne W. Zawitz, *Firearms, Crime, and Criminal Justice: Guns Used in Crimes*, BJS Selected Findings, July 1995, NCJ148201 at 2. Moreover, homicide statistics from 1993-97 show 81% of firearm deaths were related to handguns, and a CDC study from the same period shows 82% of non-fatal gunshot wounds were caused by a handgun while 14% were caused by shotguns, and 4% by rifles. Marianne W. Zawitz & Kevin J. Strom, *Firearm Injury and Death from Crime, 1993-1997*, BJS Selected Findings, Oct. 2000, NCJ 182993 at 4. Based on the foregoing, it is not unconstitutional for Virginia to regulate the sale of one type of firearm in one fashion, and the sale of another type of firearm in another.

It is true that Second Amendment law is in its infancy, but that cuts against plaintiffs here. With such law as there is against them, and further legal development unknown, they cannot demonstrate a simple likelihood of success on the merits, much less satisfy the elevated standard associated with preliminary mandatory injunctions. In short, because plaintiffs' entitlement to relief is not indisputably clear, the preliminary injunction should be denied.

## CONCLUSION

WHEREFORE, Defendant W. Steven Flaherty, by counsel, respectfully requests this Court to deny Plaintiffs' Motion for Preliminary Injunction.

> W. STEVEN FLAHERTY
>
> By: _____/s/_____
> Catherine Crooks Hill, Esq.
> Virginia Bar number 43505
> Office of the Attorney General
> 900 East Main Street
> Richmond, Virginia 23219
> Phone: 804-786-8199
> Fax: 804-371-2087
> cchill@oag.state.va.us

KENNETH T. CUCCINELLI, II
Attorney General of Virginia

WESLEY G. RUSSELL, JR.
Deputy Attorney General

CATHERINE CROOKS HILL (VSB No. 43505)
GEORGE W. CHABALEWSKI (VSB No. 27040)
Senior Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, Virginia 23219
Phone: (804) 786-8199
Fax: (804) 371-2087
cchill@oag.state.va.us

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of July, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following registered CM/ECF users:

>Alan Gura
>GURA & POSSESSKY PLLC
>101 N. Columbus Street
>Suite 405
>Alexandria, VA 22314
>alan@gurapossessky.com
>
>Anna Elizabeth Cross
>U. S. Attorney Office
>2100 Jamieson Avenue
>Alexandria, VA 22314
>anna.cross@usdoj.gov
>
>Lauren A. Wetzler
>United States Attorney Office
>2100 Jamieson Ave
>Alexandria, VA 22314
>lauren.wetzler@usdoj.gov
>
>Thomas Louis Koger
>Office of the Corporation Counsel, D.C.
>441 Fourth St., NW, Rm 6S045
>Washington, DC 20001
>thomas.koger@dc.gov

>By: _____/s/_____
>Catherine Crooks Hill, Esq.
>Virginia Bar number 43505
>Office of the Attorney General
>900 East Main Street
>Richmond, Virginia 23219
>Phone: 804-786-8199
>Fax: 804-371-2087
>cchill@oag.state.va.us