**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

**MICHELLE LANE, et al.,**

      **Plaintiffs,**

v.                                                   Case No. 1:11-CV-503 – GBL/TRJ

**ERIC HOLDER, Attorney General of the United States, et al.,**

      **Defendants.**

**AFFIDAVIT OF DONNA TATE**

The affiant, Donna Tate, states as follows:

1. I make this affidavit based on personal knowledge.

2. I am currently employed as the Manager for the Firearms Transaction Center ("Center"), Virginia State Police, Richmond, Virginia.

3. I have been employed in that capacity for the past 21 years.

4. The Center is responsible for making the determination whether a prospective purchaser is eligible under federal and Virginia law to buy or receive a firearm from a licensed firearms dealer.

5. Currently, 21 persons, including myself, work in the Center. In 2008, that number was approximately 42 employees.

6. In 2010, there were a total of 267,675 separate transactions processed by the Center involving the purchase/transfer of a firearm from a licensed firearms dealer to a purchaser.

7. Virginia residents as well as non-Virginia residents are authorized by federal and Virginia law to purchase a rifle or shotgun from a licensed firearms dealer in Virginia.

8. Only Virginia residents are authorized by federal law and Virginia law to purchase a handgun from a licensed firearms dealer in Virginia.

9. When a person wishes to purchase a rifle, shotgun, or handgun from a licensed firearms dealer in Virginia, they must complete a Federal Form 4473 and Virginia Form SP65. Those forms must be filled out in the presence of the licensed firearms dealer, or one of his employees. The person consents to a criminal background check to be performed by the Virginia State Police by providing his signature on the forms.

10. After those forms are filled out by the prospective purchaser, the firearms dealer will access the Virginia State Police's VCheck computer system, and enter the information contained on those forms into that system. In the alternative, they can call an 800-telephone number in the Center, and provide that information orally by telephone to one of the Center's employees. The purpose of providing this information by computer or by phone is to permit the Center to conduct a background check on the purchaser.

11. Once that information is entered by computer, or received by phone, it is reviewed and evaluated by two employees of the Center.

12. During that review and evaluation, the Center will query three federal databases, and will query four Virginia state databases which contain information about individuals who have come into contact with the criminal justice and mental health systems, have obtained concealed handgun permits or who have purchased multiple handguns.

13. When an employee of the Center queries the databases, it is with the intent of finding out if there are any federal or Virginia disqualifiers, which would prohibit that prospective purchaser from purchasing that firearm.

14. Federal disqualifiers include, for example, that the purchaser is a convicted felon, or has a domestic violence conviction on their record.

15. Virginia state-specific disqualifiers include, for example, that the purchaser has been convicted of two separate offenses of marijuana possession within the past five years pursuant to § 18.2-308.1:5, *Code of Virginia,* or has already purchased a handgun in the last thirty-days pursuant to § 18.2-308.2:2(P), *Code of Virginia.*.

16. The first of the federal databases, "NCIC" (National Crime Information Center), contains information that indicates whether a pending warrant or pending protective order may exist against the purchaser. This data comes from all of the states, including the District of Columbia. NCIC also provides any federal criminal record that may exist or state criminal history information that may have been previously submitted to the FBI.

17. The second of those databases, "III" aka "Triple I" (Interstate Identification Index), permits the Center to determine whether there is any state specific criminal history or mental health information about the purchaser. Most states participate in the III database, though some do not.

18. The third database, "NICS" (National Instant Check System), contains general information which would disqualify an individual under federal law from purchasing a firearm. While some states have their unique disqualifying information in

that system, many do not. Unlike criminal history information, records contained in NICS are not supported by fingerprints.

19. When a Virginia resident attempts to purchase a rifle or shotgun from a licensed Virginia firearms dealer, the Center will query these federal and state databases. The Center will trust that the dealer has determined whether the type of rifle or shotgun is authorized to be possessed in Virginia. For example, a "streetsweeper" or any semi-automatic folding stock shotgun of like kind with a spring tension drum magazine capable of holding twelve shotgun shell may not be possessed by a Virginia resident in the Commonwealth pursuant to § 18.2-308.8, *Code of Virginia.*

20. When a non-Virginia resident attempts to purchase a rifle or shotgun from a licensed Virginia firearms dealer, the Center will again query these federal and state databases. The Center will again trust that the dealer has determined whether the type of rifle or shotgun is authorized to be possessed in the purchaser's home state. For example, certain rifles defined as assault weapons under California law may not be possessed by a California resident in California pursuant to California Penal Code § 12276.1.

21. When a Virginia resident attempts to purchase a handgun from a licensed Virginia firearms dealer, the Center will query these three federal databases. The Center will also query Virginia specific databases or sources, to determine whether the purchaser has some Virginia specific disqualifiers which would prohibit him from purchasing that handgun.

22. If the law permitted a non-Virginia resident to purchase a handgun from a licensed Virginia firearms dealer, the Center would once again query these three federal databases. The Center would also query Virginia specific databases or sources, to

4

determine whether the purchaser has some Virginia specific disqualifiers which would prohibit him from purchasing that handgun.  In addition, the Center would also attempt to query whatever databases or sources it has access to from the purchaser's home state, to determine whether the purchaser had some home-state specific criminal history disqualifiers, which would prohibit him from purchasing that handgun.

23.  Unfortunately, many of the state criminal history-related disqualifiers that other states utilize to block sales of handguns to their own residents, are not known by, nor readily available to, the Center just as Virginia's system to monitor handgun purchases is not available to other states or the FBI.  While there are state specific disqualifiers that apply to a particular type of rifle or shotgun, this information is readily available to the dealer.  State specific criminal history-related disqualifiers that apply to the prospective purchaser of handguns, however, are unique to each state and are not readily available to the Center.  Moreover, States continually add or change their state specific disqualifiers as they determine the need.  The effective dates of those additions and changes also vary.

24.  State law prohibits the sale of a handgun to a Virginia resident by a licensed firearms dealer without the background check identified above.  Under Virginia law, if the Center cannot complete the background check in one business day, the firearms dealer could theoretically complete the sale to the purchaser without incurring any penalty under Virginia law.  Under federal law, however, the Center has three business days in which to complete the background check.  Consequently, to comply with both state and federal law, Virginia firearms dealers must wait three business days before completing the purchase in the event that the Center cannot complete its review and

evaluation. Under federal law, if the Center cannot complete the background check in three business days, the firearms dealer could theoretically complete the sale to the purchaser without incurring any penalty under federal law.

25. Based on the Center's lack of knowledge about and/or access to the state specific disqualifiers from the 50 states of the Union, as well as the District of Columbia, and all U.S. protectorates, and based upon the lack of availability of information about those disqualifiers specific to those entities, it would be difficult if not impossible to complete evaluation of the information provided by a non-resident purchaser within the three-day time limit set by federal law.

26. Even if some of these out-of-state disqualifiers were made readily available to the Center, some background checks of non-residents will nevertheless require additional research to determine whether they would specifically prohibit that given purchaser from obtaining a handgun in his home state. For example, exactly what might constitute a disqualifier in one state may be subject to interpretation and even disagreement. At the present, there are no known readily available sources of that information. Consequently, when in doubt, there is no automated source or particular entity which the Center could query to complete its review or evaluation.

27. Additionally, handgun purchase requirements vary from state to state insofar as identification documentation is concerned. For example, in some states a permit to purchase may be required. For example, in Michigan, a person "shall not purchase, carry, or transport a pistol in this state without first having obtained a license for the pistol," as prescribed in MCL 28.422. The Center does not have access to that type of information either.

6

28. Even if the review and evaluation could be performed properly, it would require significantly more personnel in the Center to do so in a timely manner. As noted earlier, due to budget constraints, the Center is currently staffed at a 50% level from three years ago.

29. Without knowing state specific disqualifiers for a given state, and without being able to perform its review and evaluation properly, it is entirely possible that a person, who would otherwise be prohibited from purchasing a handgun in his home state, could end up purchasing a handgun in Virginia.

30. Under current law and practice, if a non-resident of Virginia wishes to purchase a handgun in Virginia, they can do so by paying the Virginia dealer for the handgun. That Virginia dealer will then ship the handgun to a licensed firearms dealer in the non-resident's home state. That home-state firearms dealer will then require the non-resident purchaser to fill out the Federal Form 4473 and whatever state form is required in the non-resident's home state. Some states do not have their own forms, and only utilize Federal Form 4473. The background check will then be performed by the agency in the non-resident's home state that is charged with performing the background check. If the background check shows the non-resident is qualified to purchase the handgun, the home state dealer will then turn over possession of the handgun to the non-resident.

31. During 2010, there were 781 arrests arising from persons trying to purchase a firearm from Virginia firearms dealers illegally. All 781 of those arrests attempted arose from misstatements or false statements made on their State or Federal forms, which were processed by the Center.

Further affiant sayeth not.

Declared and signed under penalties of perjury, 28 U.S.C. § 1746, this 1st day of July 2011.

*Donna Tate*
DONNA TATE