UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MICHELLE LANE, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-00503-GBL-TRJ |
| ) | |
| ERIC HOLDER, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

THE DISTRICT OF COLUMBIA'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DATE: July 8, 2011                    Respectfully submitted,


                    /s/ Thomas L. Koger
                    THOMAS L. KOGER, VSB No. 40086
                    Assistant Attorney General
                    Office of the Attorney General for the District of Columbia
                    Equity Section I
                    441 Fourth Street, N.W., 6th Floor South
                    Washington, D.C. 20001
                    Telephone: (202) 727-4170
                    Facsimile: (202) 751-5908
                    E-mail: thomas.koger@dc.gov

## TABLE OF CONTENTS

I. Introduction ...................................................................................................................1

II. Factual and Procedural Background ............................................................................2

   *District of Columbia Firearms Law* ..........................................................................3

III. Argument ...................................................................................................................4

    A. Plaintiffs Lack Standing...........................................................................................6

    B. Plaintiff Second Amendment Foundation Separately Lacks Standing .........................11

    C. Plaintiffs Fail to Meet Any of the Elements Necessary for
       Emergency Injunctive Relief ...................................................................................13

       1. Plaintiffs Fail to Establish A Substantial Likelihood of Success On the Merits....16

       2. Plaintiffs Have Failed to Establish Irreparable Harm .............................................23

       3. The Balance of Equities Favors Denying Injunctive Relief....................................26

       4. The Public Interest Favors the District...................................................................27

IV. Conclusion ...............................................................................................................28

## TABLE OF AUTHORITIES

**Cases**

*ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989)................................................................8

*Bennett v. Spear*, 520 U.S. 154 (1997) ..........................................................................7

*Berry v. Soul Circus, Inc.*, 189 F.Supp.2d 290 (D.Md. 2002) ........................................1

*Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977) ..........................14, 26

*Brown v. United States*, 979 A.2d 630 (D.C. 2009).......................................................18

*Burdick v. Takushi*, 504 U.S. 428 (1992).......................................................................19

*Cammarano v. United States*, 358 U.S. 498 (1959) .......................................................18

*Chance v. Randall*, 2006 WL 2918943 (E.D. Va. 2006) .................................................1

*Chaplaincy of Full Gospel Churches v. England*, 545 F.3d 290 (D.C. Cir. 2006).......................25

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).....................................................7

*Clark v. Jeter*, 486 U.S. 456 (1988)..............................................................................18

*Clawson v. FedEx Ground Package Sys.*, 451 F.Supp.2d 731, 734 (D.Md. 2006) ......................17

*Common Cause v. United States Dep't of Energy*, 702 F.2d 245 (D.C. Cir. 1983)......................10

*Communist Party of Indiana v. Whitcomb*, 409 U.S. 1235 (1972) ................................................15

*Cross v. Deutsche Bank Trust Co. Am.*, ___ F.Supp.2d ___, 2011 WL 1624958
(D.S.C. Apr. 28, 2011) ................................................................................................26

*Crutchfield v. United States Army Corps of Engineers*, 230 F.Supp.2d 687 (E.D. Va. 2002) ..6, 10

*Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802 (4th Cir. 1992) ........................24

*District of Columbia v. Heller*, 544 U.S. 570 (2008) ("*Heller*") ..................3, 4, 17, 18, 20, 24, 28

*Doe v. Obama*, 631 F.3d 157 (4th Cir. 2011) ...............................................................................10

*Elrod v. Burns*, 427 U.S. 347 (1976) ...........................................................................................25

*Ezell v. Chicago*, ___ F.3d ____, 2011 WL 2623511 (7th Cir. July 6, 2011) .........................12, 25

*Frank Krasner Enterprises, Ltd. v. Montgomery County, Md.*, 401 F.3d 230
(4th Cir. 2005) .....................................................................................................6, 7, 8, 9

*Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315 (4th Cir. 2002) ...................................6

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000)
(*en banc*) .............................................................................................................6, 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000).................12

*Fru-Con Const. Corp. v. County of Arlington*, 2006 WL 273583, *4 (E.D.Va. 2006) ...................1

*FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C. Cir. 1981) .........................................................28

*Gonzalez v. Carhart*, 550 U.S. 124 (2007) ..................................................................................19

*Hampton Univ. v. Accreditation Council for Pharmacy Ed.*, 611 F.Supp.2d 557
(E.D. Va. 2009) ..........................................................................................................28

*Hayes v. N. State Law Enforcement Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993)................27

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944) ..................................................................................27

*Heller v. District of Columbia*, 698 F.Supp.2d 179 (D.D.C. 2010)
("*Heller II*") ...............................................................4, 18, 20, 21, 22, 23, 28

*Henry v. Greenville Airport Com.*, 284 F.2d 631 (4th Cir. 1960) (*per curiam*) ............................24

*Hohe v. Casey*, 868 F.2d 69 (3rd Cir. 1989) ...............................................................................25

*Howerton v. United States*, 964 A.2d 1282 (D.C. 2009) ..............................................................18

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977) .......................................12

*In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517 (4th Cir. 2003) .......................................15, 24

*Inman v. Klockner-Pentaplast of America, Inc.*, 467 F.Supp.2d 642 (W.D.Va. 2006) .................11

*Jordan v. Alternative Res. Corp.*, 458 F.3d 332 (4th Cir. 2006)...................................................11

*Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011) ..........................................................25

*Los Angeles County v. Humphries*, ___ U.S. ___, 131 S.Ct. 447 (2010) ..................................16

*Lowery v. United States*, 3 A.3d 1169 (D.C. 2010) ......................................................................18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................................6

*Maryland Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246 (4th Cir. 1991)...........13

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)...............................................................14

*McDonald v. Chicago*, ___ U.S. ____, 130 S.Ct. 3020 (June 28, 2010) ..................................17, 25

*Microaire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F.Supp.2d 604 (W.D. Va. 2010) ......14

*MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335 (4th Cir. 2001) ............................................14

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978)....................................16

*Montana Shooting Sports Ass'n v. Holder*, 2010 WL 3926029 (D.Mont. 2010) ........................12

*Montana Shooting Sports Ass'n v. Holder*, 2010 WL 4102940 (D.Mont. 2010) ........................12

*National Audubon Society v. Department of Navy*, 422 F.3d 174 (4th Cir. 2005) ........................28

*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ....................26

*Nordyke v. King*, ___ F.3d ___, 2011 WL 1632063 (9th Cir. May 2, 2011)...........................20, 28

*Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992)................................................19, 23

*Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75 (4th Cir. 1989)..............................23

*Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342 (4th Cir. 2009), *vacated on other grounds*, 558 U.S. ___, 130 S. Ct. 2371 (2010), *reissued in part*, 607 F.3d 355 (4th Cir. 2010) (*per curiam*)...............................................................................14, 25, 26, 27

*Regan v. Taxation With Representation of Wash.*, 461 U.S. 540 (1983).....................................18

*Ross v. Meese*, 818 F.2d 1132 (4th Cir. 1987)................................................................24

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................................20

*Salt Inst. v. Thompson*, 345 F.Supp.2d 589 (E.D. Va. 2004)..........................................8, 12

*San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121 (9th Cir. 1996).........................9

*Schall v. Martin*, 467 U.S. 253 (1984)......................................................................20

*Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976) ......................................13

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000)...........................................10

*Splitfish, AG v. Bannco Corp.*, 727 F.Supp.2d 461 (E.D. Va. 2010)...........................................14

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).............................................6

*Taylor v. Freeman*, 34 F.3d 266 (4th Cir. 1994)...............................................................15

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) ..............................................................10

*United States v. Chester*, 628 F.3d 6732 (4th Cir. 2010)..................................................18, 19, 20

*United States v. Elkins*, ___ F.Supp.2d ___, 2011 WL 1637618 (W.D. Va. May 2, 2011) ...............................................................................19, 21

*United States v. Lebman*, 464 F.2d 68 (5th Cir. 1972) ......................................................22

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) ........................................19, 20, 25, 29

*United States v. Miller*, 604 F.Supp.2d 1162 (W.D. Tenn. 2009) .................................21

*United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483 (2001) ...................................27

*Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) .......................................11

*Virginia Society for Human Life, Inc. v. FEC*, 263 F.3d 379 (4th Cir. 2001) ...............................27

*Warth v. Seldin*, 422 U.S. 490 (1975) .....................................................5, 7, 9

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) .........................................27, 28

*Wetzel v. Edwards*, 635 F.2d 283 (4th Cir. 1980)........................................15

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365 (2008)....13, 14, 27

*Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 129 S.Ct. 1093 (2009)........................................18

**Statutes, Rules, and Regulations**

18 PENN. CONS. STAT. § 6111(c) (2011)........................................17

18 U.S.C. § 922 ........................................................................9

18 U.S.C. § 922(b)(3) ........................................................5, 27

24 DCMR § 2305.3 ..........................................................23

24 DCMR § 2320 ........................................ 6, 8, 17, 19, 27

24 DCMR § 2320.3(b)........................................................2

24 DCMR § 2320.3(f) ........................................................2

27 C.F.R § 478.99........................................................5, 27

42 U.S.C. § 1983 ........................................................7, 16

CAL. PENAL CODE § 12072(d) (2010) ........................................17

COLO. REV. STAT. § 12-26.1-101(2) (2010) ........................................17

D.C. OFFICIAL CODE § 7-2502.03 ........................................................5

D.C. OFFICIAL CODE § 7-2502.04 ........................................................5

D.C. OFFICIAL CODE § 7-2502.07 ........................................................5

D.C. OFFICIAL CODE § 7-2502.08 ........................................................5

VA. CODE § 18.2-308.2:2 ........................................................27

**Other Authorities**

Paul Duggan, "District's Only Firearms Dealer to Move," WASHINGTON POST, Apr. 29, 2011
    (*available online at* http://www.washingtonpost.com/local/districts-only-firearms-dealer-
    to-move/2011/04/29/AFvAGHHF_story.html) ...................................................................3

THE DISTRICT OF COLUMBIA'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>

Defendant the District of Columbia ("the District"), pursuant to Local Civil Rule 7(F)(1),

hereby opposes plaintiffs' motion for preliminary injunction.

## I. <u>Introduction</u>

The Court need not reach plaintiffs' request for emergency injunctive relief, because it

should first determine the District's pending Motion to Sever and to Transfer [Doc. No. 25]. *See*

*Berry v. Soul Circus, Inc.*, 189 F.Supp.2d 290, 294–95 (D.Md. 2002) (granting motion to transfer

for improper venue and not deciding pending motion for preliminary injunction); *Chance v.*

*Randall*, 2006 WL 2918943, *2 (E.D. Va. 2006) (granting in part defendants' motion to dismiss

for improper venue; "plaintiff's preliminary injunction motion may be renewed and addressed in

the transferee forum."); *Fru-Con Const. Corp. v. County of Arlington*, 2006 WL 273583, *4

(E.D.Va. 2006) ("As the Court is dismissing this action for improper venue, the Court does not

need to reach [plaintiff's] Motion for a preliminary injunction.").

Notwithstanding this, if it determines to reach the merits, the Court should deny

plaintiffs' request for emergency injunctive relief because plaintiffs cannot meet any element of

the four-part test required for such extraordinary relief. Worse still, plaintiffs' analysis of the test

is incorrect as a matter of law, relying on case law that has been overturned.

Moreover, plaintiffs lack standing to seek injunctive relief against the District; even

assuming that plaintiffs cannot, as alleged, register their desired handguns, that purported injury

to their rights under the Second Amendment is *not* "fairly traceable" to any unlawful actions of

the District of Columbia.

First, the United States District Court for the District of Columbia, as well as the District of Columbia Court of Appeals, have already determined, post-*Heller*, that the District's firearms registration requirements are reasonable and constitutional. *This Court should not second-guess those determinations, which are correct even under Fourth Circuit precedent.*

Second, plaintiffs' entire evidentiary presentation—such as it is—rests wholly on hearsay, *i.e.*, that there was only one firearms dealer willing to effect the transfers plaintiffs desired, but he recently lost his lease and can no longer operate by federal law, hence they cannot obtain their desired handguns. Even if true, what is most important under applicable precedent is that this chain of causation is much too attenuated to support standing. Simply put, the District did not *cause* the injuries of which plaintiffs complain.

As demonstrated herein, plaintiffs have manifestly failed to meet the high burden for the remedy demanded, and their motion should be denied.

## II. Factual and Procedural Background

According to the papers, the individual plaintiffs (all District of Columbia residents) are "unable to acquire handguns" in violation of their rights under the Second Amendment, due to the requirements of federal, Virginia, and District law, because Charles Sykes, a federal firearms licensee ("FFL") in the District lost his lease over two months ago.[1] P.Mem. at 6–7. *See also* First Amended Complaint ("FAC") ¶ 19.[2]

---

[1]     Plaintiff Lane alleges that Mr. Sykes contacted her on "April 28, 2010 [sic]" and informed her that "he had lost his lease." Declaration of Michelle Lane, dated June 17, 2011, at ¶ 5.

[2]     The District reserves and does not waive any future defensive motions or pleadings and does not admit the factual allegations of the First Amended Complaint or plaintiffs' instant motion except for purposes of this Opposition.

Plaintiffs specifically challenge Tit. 24, D.C. Mun. Reg. ("DCMR") § 2320.3(b) & (f), which require District residents seeking to register an eligible firearm to utilize a licensed firearm dealer. P.Mem. at 5. Plaintiffs allege that Mr. Sykes was the "only" FFL in the District through which they could obtain handguns purchased outside the District. *Id*. at 6. But Mr. Sykes has stated that he will re-open his business. *See* Paul Duggan, "District's Only Firearms Dealer to Move," WASHINGTON POST, Apr. 29, 2011 (*available online at* http://www.washingtonpost.com/local/districts-only-firearms-dealer-to-move/2011/04/29 /AFvAGHHF_story.html) (as of June 29, 2011).

Plaintiff Lane has registered a handgun in the District, but it is not sufficiently "comfortable" for her to be "useful." Declaration of Michelle Lane, dated June 17, 2011, at ¶ 3. Ms. Lane alleges that she has ordered two additional handguns from an FFL in Virginia, but cannot take possession of the guns and register them in the District. P.Mem. at 7–8; FAC ¶¶ 10, 17. Similarly, the Wellings allege that Ms. Welling's father, a Texas resident, wants to "gift" them a handgun and transfer it to them through an FFL in Virginia, but they cannot take possession of it and register it in the District. P.Mem. at 8; FAC ¶¶ 11, 17. The Wellings allege that they "want to have a handgun at home for self-defense" because several homes on their block have been burglarized "in recent years." P.Mem. at 8.

*District of Columbia Firearms Law*

In *District of Columbia v. Heller*, 544 U.S. 570 (2008) ("*Heller*"), the Supreme Court struck down two provisions of District firearms laws, concluding that the Second Amendment protects the right to possess a functional handgun for the purpose of self-defense within the home. *Id.* at 629. The Court ruled out "rational basis" review but otherwise declined to establish

a level of scrutiny for examining firearms regulation under the Second Amendment. *Heller*, 627–28 & n.27.

The Court confirmed that the Second Amendment has various limits. "Like most rights, the right secured by the Second Amendment is not unlimited [and] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, at 625. The Court explicitly noted that it was *not* exhaustively analyzing the scope of any right guaranteed by the Second Amendment, and acknowledged, generally, the constitutionality of "laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, at 625–27 & n.26.

In response to *Heller*, the Council of the District of Columbia acted swiftly to amend the District's gun laws, adopting a number of measures to bring the District into compliance. *See Heller v. District of Columbia*, 698 F.Supp.2d 179, 182 (D.D.C. 2010) ("*Heller II*"). The first suit challenging the District's efforts to comply with *Heller* was filed a month after that decision, by Mr. Heller himself and others, just two weeks after the District's first emergency legislation. *Id*. The plaintiffs in *Heller II* challenged almost every aspect of the District's amended firearms regime, including the registration procedures. *Id*. at 181.

The United States District Court for the District of Columbia ultimately granted summary judgment to the District, holding, *inter alia*, that the challenged provisions "permissibly regulate the exercise of the core Second Amendment right to use arms for the purpose of self-defense in the home." *Id*. at 181. The court found that the District's handgun-registration requirements, both facially and as applied, were constitutional. *Id*. at 188 & n.10.[3]

---

[3]   Plaintiffs have appealed the District Court decision. *Heller v. District of Columbia*, No. 10-7036 (D.C. Cir.). The matter has been fully briefed and argued, and the parties await a decision by the Circuit.

Currently, to register a handgun in the District, a resident must, *inter alia*, submit fingerprints and photographs to the Metropolitan Police Department ("MPD"); submit the handgun to MPD for ballistics-identification procedures; demonstrate adequate knowledge of District firearms laws regarding safe use, handling, and storage; take at least five hours of instruction and have adequate vision; and submit to a background check once every six years and renew their registration every three years. *Id.* at 189 (citing D.C. Official Code §§ 7-2502.03, .04, .07, and .08).

### III. Argument

The Court should deny plaintiffs' motion. Plaintiffs lack standing. Plaintiffs cannot show that any actions of the District *caused* the harms of which they now complain. Even assuming as true all of plaintiffs' allegations, it is not the fault of the District that there are no FFLs in the District willing to assist them. Any problem here lies with the retail firearms market and federal law, not the District itself.[4]

There is no "emergency" here requiring immediate Court intervention. The unbounded relief sought by plaintiffs will not preserve the *status quo*, but will throw into chaos a long-established regulatory structure and seriously intrude on numerous sovereigns' police powers. The flimsy showing by plaintiffs is plainly insufficient to invoke this Court's equitable discretion.

---

[4]      Federal law prohibits an FFL in a particular State from selling handguns to non-residents. 18 U.S.C. § 922(b)(3); 27 C.F.R. § 478.99(a).

A. *Plaintiffs Lack Standing.*

Plaintiffs have the responsibility "clearly to allege facts demonstrating that [they are] a proper party to invoke . . . the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

For plaintiffs to have standing, they must show (1) concrete, personal injuries to the plaintiffs, (2) which must be fairly traceable to the defendants' conduct, and (3) such injury must be "likely" to be redressed if the relief sought is granted. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The traceability requirement ensures that it is likely the plaintiff's injury was caused by the challenged conduct of the defendant, and not by the independent actions of third parties not before the court." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) (citing *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (*en banc*)).[5]

The burden to establish standing "lies squarely on the party" invoking the Court's jurisdiction. *Frank Krasner Enterprises, Ltd. v. Montgomery County, Md.*, 401 F.3d 230, 234 (4th Cir. 2005) (citing *Ljuan*). If plaintiffs cannot meet all three prongs of this test, the Court must dismiss the suit for lack of standing. Courts must resolve Article III standing questions before proceeding to the merits of a case. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88–89 (1998).

---

[5]     Plaintiffs fail the redressability element of standing as well, as against the District, in that even if the Court were to strike down 24 DCMR § 2320 in its entirety, "a number of other factors" will prevent plaintiffs from acquiring handguns as easily and cheaply as they want, *Crutchfield v. United States Army Corps of Engineers*, 230 F.Supp.2d 687, 698 (E.D. Va. 2002), not the least of which is federal law, *see* n.4, *supra*, as well as the District's "non-existent" handgun market. P.Mem. at 18. The Court cannot simply *order* firearms retailers to open in the District and begin operations at terms and prices convenient to the plaintiffs.

"[E]ach element of Article III standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Bennett v. Spear*, 520 U.S. 154, 167–68 (1997) (unanimous decision) (quoting *Lujan*, 504 U.S. at 561).

It is axiomatic that a tort claim—even a constitutional tort claim—requires, at the least, a showing of causation. *See, e.g., City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) (at a minimum, to succeed under 42 U.S.C. § 1983, a plaintiff must satisfy "the causation requirement set out on the face of" that statute); *Warth*, 422 U.S. at 509 (to succeed on a claim under 42 U.S.C. § 1983, there must be, *inter alia*, a "line of causation" between the defendant's actions and the asserted injuries).

Where, as here, plaintiffs do not complain of any direct action by the District itself, but only that the "asserted injury arises from [the District's] allegedly unlawful regulation (or lack of regulation) of *someone else*, satisfying standing requirements will be 'substantially more difficult." *Krasner*, 401 F.3d at 235 (emphasis in original) (citations omitted). *See id.* (standing should be denied where "the actions of an independent third party, who was not a party to the lawsuit, stood between the plaintiff and the challenged actions.").

That is the exact situation here: the alleged action/inaction by Mr. Sykes breaks the chain of causation; he allegedly lost his lease and cannot, apparently, find another economically feasible location at which to assist plaintiffs in registering their handguns.[6] This is not the District's fault.

---

[6]   In fact, plaintiffs complain that Mr. Sykes had "charged a fee of $125 per handgun transfer." FAC ¶ 18. That the ability to command such a fee does not result in Mr. Sykes having any competition reflects the fact that plaintiffs' quandary is a function of the interplay of a number of factors combining to make the District a jurisdiction with no retail firearms establishments. *See* P.Mem. at 2.

Plaintiffs allege an "inability to access constitutionally-protected arms" and that they are "being denied the means of self-defense . . . ." P.Mem. at 12. But those asserted injuries, even if true, are not caused by any action or inaction *of the District*. The District does not disagree, as a general matter, that "the District of Columbia's handgun market is non-existent." *Id*. at 18. This situation may have arisen from the unique history of the District's firearms laws and the District's status as the seat of American government, but that does not mean that the District's current, reasonable regulations have "caused" the harms alleged. Plaintiffs lack standing here, because their alleged injuries derive from "the *unfettered choices made by independent actors not before the courts* and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict." *Krasner*, 401 F.3d at 235 (emphasis in original) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J.)). *See also Salt Inst. v. Thompson*, 345 F.Supp.2d 589, 599 (E.D. Va. 2004) (associations lacked standing because alleged injuries were not fairly traceable to government but "attributable to some independent third party not before the Court.").

In *Krasner*, the Fourth Circuit held that a gun-show promoter and exhibitor lacked standing to challenge "a county law that denies public funding to venues that display and sell guns" because the organization that owns the venue where plaintiffs regularly held gun shows was not a party to the action. *Id*. at 232. The organization, after the passage of the law, had declined to lease the venue for gun shows. *Id*. The Circuit found that plaintiffs could not establish the causation and redressability elements of standing; the purported injuries were "not directly linked to the challenged law because an intermediary . . . stands between the plaintiffs and the challenged conduct in a way that breaks the causal chain." *Id*. at 236. The Circuit held

that it could not compel the venue to lease space to plaintiffs, nor could it compel the county to subsidize the venue. *Id.*

So too here: While plaintiffs complain that they have an "inability to access" handguns in the District due to 24 DCMR § 2320, that alleged injury is *not* caused by the District. The fact that "a variety of circumstances have combined to eliminate all retail gun stores[,]" in the District, P.Mem. at 2, may be true, but neither those circumstances nor Mr. Sykes' alleged lease difficulties can be attributed to the District. The causal chain is irreparably broken, and plaintiffs simply lack standing as against the District.

The *Krasner* decision relied heavily on *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121 (9th Cir. 1996). There, the Ninth Circuit denied standing to a group of plaintiffs who alleged, *inter alia*, that the federal Violent Crime Control and Law Enforcement Act of 1994 (*codified as amended at* 18 U.S.C. §§ 922 *et seq.*) made the guns they wished to purchase more expensive. *Id.* at 1124–30. Even assuming that the law restricted the supply of guns and that that "economic injury" was an injury-in-fact for standing purposes, the Ninth Circuit held that plaintiffs lacked standing, because "'nothing in the Act directs manufacturers or dealers to raise the prices of regulated weapons.' Rather, third parties such as weapons dealers and manufacturers broke the chain of causation by independently charging higher prices." *Krasner*, 401 F.3d at 235 (quoting *San Diego County Gun Rights*, 98 F.3d at 1130).

That exact breakdown in the chain of causation is present here. Plaintiffs complain that the District's firearms regulations are "burdensome and expensive," Lane Decl. ¶ 6, and have "entirely foreclose[d,]" P.Mem. at 19, access to handguns. But nothing in District law or regulation prohibits handgun retailers from operating in the District, or from charging fair prices. Plaintiffs' difficulty in acquiring handguns "is the consequence of the economics of the [m]arket,

rather than of [the District's] assertedly illegal acts." *Crutchfield*, 230 F.Supp.2d at 698 (quoting

*Warth*, 422 U.S. at 506–507)).

History and the free market have failed the plaintiffs, not the District. It is not the

government's responsibility to guarantee (or even encourage) a flourishing market in affordable

handguns. Although plaintiffs aver that Mr. Sykes recently lost his lease, FAC ¶ 19, plaintiffs

have not provided any information regarding the circumstances under which that loss occurred in

the first place, or why he has not leased other space and resumed his business. Certainly, nothing

in plaintiffs' papers reflects that Mr. Sykes' loss of his lease or his failure (or decision not) to

lease new business space was caused by the District. *See, e.g., Doe v. Obama*, 631 F.3d 157, 162

(4th Cir. 2011) (it is "a fundamental tenet of standing doctrine: where a third party . . . makes the

independent decision that causes an injury, that injury is not fairly traceable to the

government.").

The free market's failures cannot be laid at the feet of the District. Plaintiffs lack standing

here.

> [W]here injury is alleged to occur within a market context, the concepts of
> causation and redressability become particularly nebulous and subject to
> contradictory, and frequently unprovable analyses. [T]he instant controversy . . .
> presents a paradigm of this difficulty. [T]he plaintiff seeks to change the
> defendant's behavior only as a means to alter the conduct of a third party, not
> before the court, who is the direct source of the plaintiff's injury.

*Common Cause v. United States Dep't of Energy*, 702 F.2d 245, 251 (D.C. Cir. 1983) (citations

and footnote omitted).

On the contrary, plaintiffs have volunteered an explanation that undermines their ability

to proceed at all. Plaintiffs place the blame for their difficulties on the lack of a marketplace for

handguns in the District. *See* FAC ¶ 19; P.Mem. at 2. In doing so, plaintiffs defeat any claim to

standing they might otherwise assert. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)

- 10 -

(quoting *Sparrow v. United Air Lines, Inc*., 216 F.3d 1111, 1116 (D.C. Cir. 2000) ("[I]t is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible.")).[7] Plaintiffs have attributed their inability to transfer handguns into the District to forces in the marketplace affecting handgun sales and, perhaps, commercial real estate. These allegations are fatal to their claims under a Rule 12(b)(6) analysis. *See Inman v. Klockner-Pentaplast of America, Inc.*, 467 F.Supp.2d 642, 649 (W.D.Va. 2006) ("courts should be especially leery of allowing complaints to survive motions to dismiss in situations in which the plaintiff alleges one thing in conclusory terms, but the complaint also alleges certain things that seem to give rise to the opposite inference.") (citing *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 345 (4th Cir. 2006)). *See also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (courts need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.") (citation omitted). Accordingly, plaintiffs' motion should be denied and the FAC dismissed as against the District without more.

### B. Plaintiff Second Amendment Foundation Separately Lacks Standing.

The Court need not reach the question as to the separate standing of plaintiff Second Amendment Foundation ("SAF"), as it—like the individual plaintiffs—cannot meet the causation element. Notwithstanding this, and to preserve the argument, the District avers that SAF separately lacks standing, as shown briefly herein.

---

[7]       In *Trudeau*, a producer of infomercials challenged a government press release describing the settlement of a proceeding involving alleged health-product misrepresentations, asserting that whether the press release was "false or misleading" could not be determined on a motion to dismiss. *Id*. at 193. The D.C. Circuit upheld the dismissal of the complaint for failure to state a claim, because no reasonable person could believe that the statements were false or misleading as a matter of law. *Id*. at 197.

An organization has standing only if it meets a *separate* three-prong test; such standing exists where the organization's members (1) would have standing to sue in their own right, (2) the interests that the organization seeks to protect are germane to its purposes, and (3) neither the claims asserted nor the relief requested requires the participation of each of the organization's individual members. *Friends of Ferrell Parkway*, 282 F.3d at 320 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) and *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)).

SAF asserts, *inter alia*, that its members and supporters "participate in the market for handguns," and are "adversely impacted by the additional costs and loss of choice imposed" by the challenged provisions. Declaration of Julianne Versnel, dated June 20, 2011, ¶ 4. SAF alleges that its "resources are taxed by inquiries into the operation and consequences of" the challenged laws and regulations. *Id*. Where, as here, the alleged injuries suffered by plaintiff SAF are not as "self-evident" as those asserted by the individual plaintiffs, the standing inquiry "must reflect the context in which the suit is brought." *Gaston Copper*, 204 F.3d at 154. SAF's concerns with "the consequences of gun control[,]" FAC ¶ 2, do not, alone, confer standing, "because these and other noneconomic interests may be widely shared . . . ." *Gaston Copper*, 204 F.3d at 154.

Plaintiff SAF lacks standing because it has not alleged that any of its members have suffered any concrete, particularized injuries, and the injuries of which it complains are too generalized to permit standing. *See Salt Inst.*, 345 F.Supp.2d at 601 (plaintiff organizations lack standing because they failed to allege, as to their members, "a concrete and particularized injury that would give them the right to sue on their own behalf."). *See also, e.g., Montana Shooting Sports Ass'n v. Holder*, 2010 WL 3926029, *14 (D.Mont. 2010) (SAF lacked standing because "it has not identified any member of its organization that might have standing in his or her own

right."), *adopted*, 2010 WL 4102940 (D.Mont. 2010). *But cf. Ezell v. Chicago*, ___ F.3d ____,

2011 WL 2623511, *7 (7th Cir. July 6, 2011) (in suit challenging municipal ordinance

prohibiting firing ranges, finding that SAF and Illinois Rifle Association "have many members

who reside in Chicago and easily meet the requirements for associational standing").

Indeed, aside from a few sentences in the FAC and the vague, self-serving, conclusory

assertions in Ms. Versnel's four-paragraph declaration, there are *no* allegations that any of SAF's

members or the organization itself has been specifically harmed in any legally cognizable way.

Consequently, SAF lacks standing. *See Maryland Highways Contractors Ass'n, Inc. v.*

*Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("although the Association alleges that its broad

purposes have been violated by the [statute], this type of injury is insufficient to support

standing.") (citing and quoting *Simon v. Eastern Kentucky Welfare Rights Org*., 426 U.S. 26, 40

(1976)).


C. *Plaintiffs Fail to Meet Any of the Elements Necessary for Emergency Injunctive Relief.*

In order to obtain emergency injunctive relief, a plaintiff must satisfy *each* prong of the

following four-part test, by demonstrating: "[1] that he is *likely* to succeed on the merits, [2] that

he is *likely* to suffer irreparable harm in the absence of the preliminary relief, [3] that the balance

of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural*

*Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008) (emphasis added)

(citations omitted).

Plaintiffs have failed to make a satisfactory showing on *any* of the four factors, hence their

demand for emergency injunctive relief should be denied. Worse, plaintiffs affirmatively misstate

controlling law.

Plaintiffs cite to *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.

1977), and assert that that case stands for the proposition that "[I]t is enough that grave or serious

questions are presented; and plaintiff need not show a likelihood of success." P.Mem. at 11. This

is wrong as a matter of law; *Blackwelder* was overturned almost two years ago. *See Real Truth*

*About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. Aug. 5, 2009), *vacated on other*

*grounds*, 558 U.S. ___, 130 S.Ct. 2371 (2010), *reissued in part*, 607 F.3d 355 (4th Cir. 2010) (*per*

*curiam*) ("On further consideration, we now reissue Parts I and II of our earlier opinion in this

case, 575 F.3d at 345–47, stating the facts and articulating the standard for the issuance of

preliminary injunctions."). *See, e.g., Splitfish, AG v. Bannco Corp.*, 727 F.Supp.2d 461, 464–65

& n.5 (E.D. Va. 2010) (discussing the overruling of *Blackwelder*; "the new standard of *Real*

*Truth* clearly elevates plaintiffs' burden.").

The Fourth Circuit in *Real Truth* could hardly have been clearer: "The *Winter*

requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far

stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious

*question* for litigation." *Real Truth*, 575 F.2d at 346–47 (emphasis in original).

"A preliminary injunction is 'an extraordinary remedy never awarded as of right,' and it

'involve[s] the exercise of very far-reaching power to be granted only sparingly and in limited

circumstances." *Microaire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F.Supp.2d 604, 615

(W.D. Va. 2010) (quoting *Winter*, 129 S.Ct. at 374 and *MicroStrategy, Inc. v. Motorola, Inc.*, 245

F.3d 335, 339 (4th Cir. 2001)).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should

grant such relief only where plaintiff makes a "clear showing" of entitlement to such relief. *Real*

*Truth*, 575 F.3d at 345–46. *See also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (interim injunctive relief is "an extraordinary and drastic remedy")).

Traditionally, the purpose of emergency injunctive relief is to protect the *status quo* and prevent irreparable harm. *See, e.g., In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003) (and cases cited therein). Here, however, a preliminary injunction would *not* preserve the *status quo*, as Mr. Sykes apparently lost his lease weeks before plaintiffs filed their original complaint. The relief sought here would be a "mandatory injunction," requiring defendants to take affirmative action, by changing the ordinary course of the firearms-registration process.

Plaintiffs seek a mandatory injunction at the onset of the litigation, to prevent enforcement of important police-power laws and regulations. Such a demand requires plaintiffs to meet an even more stringent burden. *Id*. at 525–26 (citing, *inter alia*, *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994) ("Mandatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances"); *Communist Party of Indiana v. Whitcomb*, 409 U.S. 1235 (1972) (Rehnquist, J., opinion in chambers) ("extraordinary remedy" of mandatory injunction should be employed "only in the most unusual case" where the right to relief is "indisputably clear."); *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) ("Mandatory preliminary injunctions [generally] do not preserve the *status quo* and normally should be granted only in those circumstances when the exigencies of the situation demand such relief.")).

As discussed herein, plaintiffs fail to meet their burden. If there is no need to protect the *status quo* or prevent irreparable harm, "then a preliminary injunction should not be considered." *Microsoft*, 333 F.3d at 526.

## 1. Plaintiffs Fail to Establish A Substantial Likelihood of Success On the Merits.

Plaintiffs have not shown a substantial likelihood of success on the merits of any of their claims. Plaintiffs' arguments remain incorrect, even if it were appropriate for the Court to reach them here. Notwithstanding plaintiffs' fatal lack of standing, the challenged District regulation, on its face or as applied, does not violate the Second Amendment. Even if it determines to reach the question, this Court, as did the U.S. District Court for the District of Columbia, should apply the intermediate scrutiny standard, under which the District's firearms-registration requirements easily pass constitutional muster.

Plaintiffs base their claim that they are unable to obtain handguns on the fact that because Mr. Sykes is not operating as an FFL, they are currently unable to complete the requirements under federal, Virginia, and District law to transfer the guns into the District and take possession of them. Plaintiffs ignore the hard reality that, to prevail upon their claims, civil rights plaintiffs suing a municipality under 42 U.S.C. § 1983 "must show that the injury was caused by a municipal policy or custom", whether they seek damages or prospective relief. *Los Angeles County v. Humphries*, ___ U.S. ___, 131 S.Ct. 447, 449, 453–54 (2010) (discussing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978)). The FAC does not allege that Mr. Sykes' business situation—or his choice(s)—was caused by an unconstitutional municipal policy or custom. Mr. Sykes' private business circumstances are not a "policy decision" of the District, or caused by one, directly or indirectly. Accordingly, as a matter of law, plaintiffs do not enjoy a reasonable likelihood of success on the merits.

Seen in its proper context, *i.e.*, the universe of District handgun regulations, the requirement to go through a federally licensed dealer is eminently reasonable and imposes no

more of a burden—much less a "substantial burden"—on plaintiffs' Second Amendment rights than any of the *other* regulations previously upheld.[8]

Plaintiffs allege that, pursuant to the operation of 24 DCMR § 2320 and federal and Virginia law, "District of Columbia residents are unable to lawfully acquire handguns other than by inheritance." P.Mem. at 6. Plaintiffs apparently assert that these provisions' requirement of a "local middleman" violates their rights under the Second Amendment. *Id*. at 16. Plaintiffs argue that the "interstate handgun transfer prohibitions" are subject to, and fail, strict scrutiny.[9] *Id*. at 14, 16.

Plaintiffs are incorrect, as inadvertently revealed in the first sentence of the relevant section of their brief, which reads "The Constitution Secures Access to Handguns." *Id*. at 13. That statement is wrong as a matter of law, and neatly demonstrates plaintiffs' sledgehammer approach. Neither *Heller* nor *McDonald v. Chicago*, ___ U.S. ____, 130 S.Ct. 3020 (June 28,

---

[8]      Moreover, other states have long imposed similarly "burdensome" requirements on handgun sales. *See, e.g.*, CAL. PENAL CODE § 12072(d) (2010) (where neither party to firearm transaction holds a California firearms dealer's license, "the parties to the transaction shall complete the sale, loan, or transfer of that firearm through a licensed firearms dealer . . . ."); COLO. REV. STAT. § 12-26.1-101(2) (2010) (requiring "the services of one or more licensed gun dealers on the premises" of a gun show prior to any firearms transfers at the show); 18 PENN. CONS. STAT. § 6111(c) (2011) ("Any person who is not a licensed importer, manufacturer or dealer and who desires to sell or transfer a firearm to another unlicensed person shall do so only upon the place of business of a licensed importer, manufacturer, dealer or county sheriff's office, the latter of whom shall follow the procedure set forth in this section as if he were the seller of the firearm.").

[9]      In the referenced portion of plaintiffs' brief, they challenge what they term the "interstate handgun transfer prohibitions," but they never mention—let alone explicitly challenge—the District's regulation. While 24 DCMR § 2320 is referenced in plaintiffs' proposed order, plaintiffs never explain exactly *how* that provision is unconstitutional. Consequently, by failing to raise any specific constitutional objections to that provision, they have waived such a challenge. *See, e.g., Clawson v. FedEx Ground Package Sys.*, 451 F.Supp.2d 731, 734 (D.Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.").

2010), so held. Plaintiffs attempt to turn case law on its head. The District agrees with plaintiffs that, after those cases, the Second Amendment secures a right to possess functional handguns in the home for self-defense. But that proposition is fundamentally different than the one argued by plaintiffs: "Because there is a right to possess handguns there is, necessarily, a right to acquire them." P.Mem. at 13. That statement is the equivalent of saying that the government must somehow facilitate "access" to deadly weapons. Not so. The government, of course, is not obligated to subsidize the exercise of citizens' constitutional rights. "[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, ___, 129 S.Ct. 1093, 1098 (2009) (quoting *Regan v. Taxation With Representation of Wash*., 461 U.S. 540, 549 (1983)); *Regan*, 461 U.S. at 546 ("We again reject the 'notion that First Amendment rights are somehow not fully realized unless they are subsidized by the State.'") (quoting *Cammarano v. United States*, 358 U.S. 498, 515 (1959) (Douglas, J. concurring)).

Even if the Court determines to analyze the single District regulation challenged by plaintiffs, it passes constitutional muster. The court in *Heller II* rejected the strict scrutiny review urged by those plaintiffs, instead applying the "intermediate scrutiny" standard used by the majority of other courts, and upheld the challenged restrictions. 698 F.Supp.2d at 188.[10] A law

---

[10]     The District of Columbia Court of Appeals has similarly approved, albeit implicitly, this standard of review and the District's post-*Heller* firearms regime. *See Lowery v. United States*, 3 A.3d 1169, 1175–76 (D.C. 2010) (Statutes establishing qualifications for firearms registration are compatible with the core interest protected by the Second Amendment and not unconstitutional); *Brown v. United States*, 979 A.2d 630, 639 (D.C. 2009) (firearms license requirement "does not appear as a substantial obstacle to the exercise of Second Amendment rights. Moreover, while the statute indisputably imposes a regulatory restriction on the right to bear arms, on its face it does not stifle a fundamental liberty."); *Howerton v. United States*, 964 A.2d 1282, 1287, 1289 (D.C. 2009) (firearms licensing statutes not facially unconstitutional or invalid in light of *Heller*).

survives intermediate scrutiny if it is substantially related to an important government interest. *Id*. at 185 & n.7 (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988)). The District provision challenged easily passes this test.

Plaintiffs argue that the Fourth Circuit mandates that "strict scrutiny" be applied here. P.Mem. at 15. Plaintiffs, again, are incorrect. *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010) ("We do not apply strict scrutiny whenever a law impinges upon a right specifically enumerated in the Bill of Rights.").[11] *See also United States v. Elkins*, ___ F.Supp.2d ___, 2011 WL 1637618, *4 (W.D. Va. May 2, 2011) ("the Fourth Circuit has not determined the particular standard of scrutiny to apply") (citing *United States v. Masciandaro*, 638 F.3d 458, 469–70 (4th Cir. 2011)). Courts must examine the nature of the interest implicated under the Second Amendment, the extent to which those interests are assertedly burdened, and the strength of the government's justifications for the restrictions. *Id*. "A severe burden on the core Second Amendment right of armed self-defense should require strong justification." *Masciandaro*, 638 F.3d at 470.

Here, the District does not dispute that the core of the Second Amendment is the ability of a citizen to possess a handgun in the home for self-defense. *Id*. (citing *Chester*, 628 F.3d at 676, 683). But because the challenged provision—24 DCMR § 2320—does not result in a

---

[11]     The Supreme Court has repeatedly declined to apply strict scrutiny to every law that regulates the exercise of a "fundamental right," even those under the First Amendment, despite language cited by plaintiffs to the contrary. For example, while there is a recognized constitutional right to obtain an abortion, the Supreme Court has sustained regulations that have had the effect of increasing the cost (or decreasing the availability) of those procedures. *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 874 (1992). The regulations were upheld because they did not impose an "undue burden" on the exercise of the right. *See Gonzalez v. Carhart*, 550 U.S. 124, 146 (2007). Similarly, the Supreme Court has subjected laws regulating the right to vote or associate with others for political purposes to strict scrutiny only where those rights were "subjected to 'severe' restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

"complete and permanent" prohibition on District residents registering handguns, it is subject to intermediate scrutiny.[12] *Elkins*, *supra*, at *4. *See also Heller II*, 698 F.Supp.2d at 190 (courts post-*Heller* have upheld firearms licensing and registration requirements generally because they "only regulate, rather than prohibi[t], the possession of firearms"). *Cf. Nordyke v. King*, ___ F.3d ___, 2011 WL 1632063, * 3 (9th Cir. May 2, 2011) ("only regulations that substantially burden the right to bear arms should receive heightened scrutiny.") (citing, *inter alia*, *Masciandaro* and *Chester*).

Intermediate scrutiny requires the government to show "a reasonable fit between an important government goal and the statute's restrictions." *Id.* at *5 (citing *Chester*, 628 F.3d at 683). The court in *Heller II* applied intermediate scrutiny, after finding that registration requirements implicate the core Second Amendment right, and noted the important interests protected here:

> The Committee Report that the Committee on Public Safety and the Judiciary issued concerning the Act explains that the Council's intent in promulgating the registration scheme was to
>
> > give[ ] law enforcement essential information about firearm ownership, allow [ ] officers to determine in advance whether individuals involved in a call may have firearms, facilitate[ ] the return of lost or stolen firearms to their rightful owners, assist[ ] law enforcement in determining whether registered owners are eligible to possess firearms or have fallen into a prohibited class, permit[ ] officers to charge individuals with a crime if an individual is in possession of an unregistered firearm, and permit[ ] officers to seize unregistered weapons.
>
> Committee Report at 3–4. The court has no trouble concluding that these goals constitute an important governmental interest. *See, e.g., United States v. Salerno*, 481 U.S. 739, 748–50 (1987) (noting that "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's

---

[12]     Again, even assuming that plaintiffs are temporarily foreclosed from obtaining and registering the handguns of their choice in the District, that "prohibition" is not the fault of the District.

liberty interest" and holding that the government's interest in preventing crime is not only important, but compelling); *Schall v. Martin*, 467 U.S. 253, 264 (1984) (remarking that "[t]he legitimate and compelling state interest in protecting the community from crime cannot be doubted" (citations and quotation marks omitted)).

*Id*. at 190–91 (alterations in original) (parallel citations omitted).

The court also noted that "'intermediate scrutiny, by definition, permits [legislative bodies] to paint with a broader brush' than strict scrutiny. [A]s a consequence, the degree of fit between the registration scheme in this case and the well-established goal of promoting public safety need not be perfect; it must only be substantial." *Id*. at 191 (quoting *United States v. Miller*, 604 F.Supp.2d 1162, 1171 (W.D. Tenn. 2009)). *See also Elkins*, *supra*, at *5 ("Empirical or sociological data is unnecessary to show the relationship between the restriction and the goal or reducing gun violence. The procedural and temporal limitations imposed are sufficient to establish the requisite reasonable fit.") (footnote omitted).

The *Heller II* court upheld the District's registration scheme, finding that the evidence in the public record was sufficient to demonstrate a substantial relation to the important government interest of protecting public safety:

> The Council, based on the testimony received during the hearings on the Act, concluded that the registration scheme is "critical" to accomplishing the District's public safety goals.
>
> [T]he Council referenced, and appended to the Committee Report, the testimony of MPD Chief Cathy Lanier, in which she stated that the registration scheme would allow MPD to accomplish four important public safety goals. First, the registration scheme allows MPD to "verify[ ] the eligibility of the owner to legally possess the firearm." Chief Lanier clarified that "the criminal background check performed by MPD, which is based on fingerprints, is more effective than that performed by a gun dealer, which is merely based on a social security number." Chief Lanier added that local background checks have been found to reduce homicide and suicide rates. Second, the registration scheme allows MPD to "ensur[e] that owners have a common body of knowledge" concerning firearms. This capability is vital, Chief Lanier explained, because in addition to criminal gun violence, MPD is concerned about a "potential increase in accidental

injuries and their impact on public health and economic outcomes." Third, the firearms registration requirements enable law enforcement officers to "readily distinguish between a registered owner legally transporting a firearm, and someone carrying an illegal firearm," which Chief Lanier described as "critical to public safety in the District." Finally, Chief Lanier testified that the process of "tracking legal firearms that may be lost, stolen, or used in a crime" yields important public safety benefits.

*Heller II* at 192 (citations omitted).[13]

Plaintiffs' challenge is most noteworthy for what it does *not* encompass. Plaintiffs are not asserting that the District's firearms-registration regime as a whole is unconstitutionally burdensome. Plaintiffs do not complain about the steps in the multi-step process upheld in *Heller II*, such as the requirement that applicants: provide fingerprints and photographs to the MPD; submit all handguns to the MPD for ballistics testing; have adequate vision; have satisfactory

---

[13]     These justifications are consonant with the purposes articulated by Congress when it originally enacted the law governing interstate purchase and transfer of handguns decades ago:

> [E]xisting Federal controls over such traffic do not adequately enable the States to control this traffic within their own borders through the exercise of their police power . . . [T]he ease with which any person can acquire firearms other than a rifle or shotgun . . . is a significant factor in the prevalence of lawlessness and violent crime in the United States . . . . [O]nly through adequate Federal control over interstate and foreign commerce in these weapons, and over all persons engaging in the business of importing, manufacturing, or dealing in them, can this grave problem be properly dealt with, and effective State and local regulation of this traffic be made possible . . . . [T]he acquisition on a mailorder basis of firearms other than a rifle or shotgun by nonlicensed individuals, from a place other than their State of residence, has materially tended to thwart the effectiveness of State laws and regulations, and local ordinances . . . . [T]he sale or other disposition of concealable weapons by importers, manufacturers, and dealers holding Federal licenses, to nonresidents of the State in which the licensees' places of business are located, has tended to make ineffective the laws, regulations, and ordinances in the several States and local jurisdictions regarding such firearms . . . .

*United States v. Lebman*, 464 F.2d 68, 70 n.4 (5th Cir. 1972) (quoting Section 1, Title IV, the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90-351; 1968 U.S.C.C.A.N. 270–71).

knowledge of District law regarding the safe use, handling, and storage of firearms; obtain at least five hours of firearms training by a certified instructor. *See Heller II* at 189. Plaintiffs also do not complain about the *other* potentially burdensome steps to register handguns in the District, such as the requirement that an applicant appear in person at MPD for registration (24 DCMR § 2313) and the prohibition on registering more than one pistol in a 30-day period (24 DCMR § 2305.3). Plaintiffs complain only about one relatively minor aspect of a multi-step process, which process has already been upheld generally. Plaintiffs' challenge cannot succeed.

This Court, even if it determines to reach the merits of plaintiffs' Second Amendment Claims, should follow the logic of *Heller II* and reject plaintiffs' challenge to the single District regulation challenged here. "The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or expensive . . . cannot be enough to invalidate it." *Gonzalez*, 550 U.S. at 157–58 (quoting *Casey*, 505 U.S. at 874).

## 2. Plaintiffs Have Failed to Establish Irreparable Harm.

As noted above, plaintiffs allege that they first learned of Mr. Sykes' purported inability to assist them with registration in April of this year. However, they did not seek a preliminary injunction until June 20, 2011, after first filing an original complaint and then an amended complaint.[14] Such delay weighs against plaintiffs here. *See, e.g., Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (delay in seeking emergency relief is "quite relevant to balancing the parties' potential harms. 'Since an application for preliminary injunction is based

---

[14]      Similarly, the Declaration of David Slack was executed on May 29, 2011, nearly three weeks before plaintiffs' counsel raised the possibility of moving for a preliminary injunction.

on an urgent need for the protection of [a] Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required.") (citations omitted).

Simply put, there is no "emergency" here. The Wellings allege that other homes on their block have been "burglarized in recent years." Declaration of Amanda Welling, dated June 19, 2011, at ¶ 3; Declaration of Matthew Welling, dated June 19, 2011, at ¶ 3. That is as close as any of the plaintiffs come to alleging any looming threat to their "hearth and home." *Heller*, 128 S.Ct. at 2821. Consequently, they have failed to show the required *imminent* threatened injury qualifying them for the extraordinary relief they seek. *See In re Microsoft*, 333 F.3d at 528 (plaintiff must demonstrate that the "harm to be forestalled by preliminary injunctive relief be 'immediate' or, stated alternatively, 'imminent,' as a condition precedent to the issuance of such relief . . . ."); *id.* at 529 ("traditional principles of equity . . . require immediacy of irreparable harm for all preliminary injunctions . . . .") (citing and quoting *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 815 (4th Cir. 1992) (requiring plaintiff seeking preliminary injunction to make a "'clear showing' that it will suffer an immediate irreparable harm were such relief not granted")).[15]

Plaintiffs have simply failed to show any *imminence* here. To the extent plaintiffs argue that any infringement of their rights under the Second Amendment is, itself, irreparable harm, they are incorrect. *See* P.Mem. at 12. None of the cases they cite stand for that overbroad proposition.[16]

---

[15]    *Cf. In re Microsoft*, 333 F.3d at 531 ("lack of evidence sufficient to prove immediate irreparable harm alone requires that the mandatory preliminary injunction entered by the district court be vacated . . . .").

[16]    The language quoted by plaintiffs puts the cart before the horse. *See Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) ("[T]he denial of a constitutional right, if denial is established, constitutes irreparable harm for purposes of equitable jurisdiction."). That quote pre-supposes that a "denial" caused by a defendant has already been proven. Not so here. *See also Henry v. Greenville Airport Com.*, 284 F.2d 631, 633 (4th Cir. 1960) (*per curiam*) ("The District

Moreover, plaintiffs gloss over the distinction found in case law between "direct penalization, as opposed to incidental inhibition," only the *former* of which qualifies for emergency injunctive relief. *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (quoting *Hohe v. Casey*, 868 F.2d 69, 72–73 (3rd Cir. 1989)).[17] In *Legend Night Club*, the Fourth Circuit, applying intermediate scrutiny, affirmed the grant of a preliminary injunction against enforcement of a Maryland law that would have prohibited plaintiffs "from providing both alcoholic beverages and adult entertainment." *Id*. at 295.

Here, of course, the challenged District regulation does not *prohibit* the individual plaintiffs from exercising their rights under the Second Amendment, it only arguably makes that exercise more difficult and expensive, neither of which is a violation of the Constitution. The roadblock alleged by plaintiffs, even if true, is not the fault of the District.

Further, Ms. Lane concedes that she has registered a handgun in the District, *see* Declaration of Michelle Lane, dated June 17, 2011, at ¶ 3, reflecting that she has no immediate

---

Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right."). That quote, too, pre-supposes clear evidence of a denial caused by a defendant. Finally, plaintiffs cite *Elrod v. Burns*, 427 U.S. 347, 373 (1976), which contains the frequently quoted statement "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." That language, however, is not binding. *See, e.g., Chaplaincy of Full Gospel Churches v. England*, 545 F.3d 290, 300, n.7 (D.C. Cir. 2006) ("Because the [*Elrod*] plurality's discussion of irreparable harm did not enjoy the support from a majority of Justices, it is not binding precedent . . . ."). Consequently, even if the cited cases survived *Real Truth*, they work against plaintiffs here.

[17]    *See also Ezell, supra*. There, the Seventh Circuit reversed the denial of a preliminary injunction, sought to prevent enforcement of a municipal ordinance that, while mandating one hour of training at a firing range as a prerequisite to lawful gun ownership, also entirely prohibited all firing ranges in the city. *Id*. at *1. "Stung by the result of [*McDonald*], the City quickly enacted an ordinance that was too clever by half." *Id*. at *20 ("the district court should have granted an injunction against the operation of the ordinance to the extent that it imposed an impossible pre-condition on gun ownership for self-defense in the home.") (Rovner, J., concurring).

need for additional handguns to enjoy her Second Amendment right to "possess firearms for self-defense within the home." *See Masciandaro*, 638 F.3d at 467.

Plaintiffs fail to make an adequate showing of irreparable harm and therefore their demand for a preliminary injunction must fail.

### 3. The Balance of Equities Favors Denying Injunctive Relief.

Plaintiffs seek to enjoin enforcement of laws of substantial importance to public safety. Notwithstanding plaintiffs' incorrect invocation of the appropriate legal test, the balance of equities tips decidedly in favor of defendants where plaintiffs essentially are asking this Court to issue a mandatory injunction now, where no injury caused by the defendants is imminent.[18]

An injunction would substantially injure the District of Columbia and its citizens. "[A]ny time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).

When considering the harm to the parties in determining the balance of equities, the Court must not only consider the parties to the case, but also the public. *See Cross v. Deutsche Bank Trust Co. Am.*, ___ F.Supp.2d ___, 2011 WL 1624958, *3 (D.S.C. Apr. 28, 2011) (citing *Real Truth*, 575 F.3d at 347). The balance of equities tips decidedly in favor of the District here, where plaintiffs seek a broad invalidation of important police-power laws and regulations. The proposed injunction, if granted, would throw into disarray a carefully calibrated regime for

---

[18]     *See Real Truth*, 575 F.3d at 347 ("the *Blackwelder* balance-of-hardship test may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit . . . .").

allowing the responsible exercise of Second Amendment rights while at the same time safeguarding public health and safety.

In these circumstances, the District enjoys the balance of the equities in its favor.

### D. The Public Interest Favors the District.

It is plaintiffs' self-interest, not the public interest, which is at the root of the Complaint. The public interest favors denying plaintiffs' request for a preliminary injunction.

While for "several hundred years" courts sitting in equity have had the discretion to weigh the public interest in granting or denying injunctive relief, such courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 496 (2001) (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30 (1944) and *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). *See also Real Truth*, 575 F.2d at 347 ("In exercising their sound discretion, courts of equity should pay *particular regard* for the public consequences in employing the extraordinary remedy of injunction.") (emphasis in original) (quoting *Winter*, 129 S.Ct. at 376–77).

An injunction here—especially the unbounded one proposed by plaintiffs—would prohibit the enforcement of federal, Virginia, and District firearms laws, relied on by those sovereigns (in some cases for decades) to protect the public safety and welfare.[19] The public

---

[19]     Plaintiffs' proposed order would enjoin defendants "from enforcing 18 U.S.C. § 922(b)(3), 27 CFR § 478.99, VA. CODE § 18.2-308.2:2, and D.C.M.R. 24-2320 in such manner as to forbid the transfer of handguns to otherwise qualified individuals on account of their state of residence." Such language is impermissibly overbroad. "Although injunctive relief should be designed to grant the full relief needed to remedy the injury to the prevailing party, it should not go beyond the extent of the established violation." *Virginia Society for Human Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001) (quoting *Hayes v. N. State Law Enforcement Officers Ass'n*, 10

interest lies with the government here. This Court should not, on the basis of plaintiffs' flimsy showing, so quickly discard the District's "usual and reasonable" firearms-regulation regime. *Heller II*, 698 F.Supp.2d at 197.

"Private equities do not outweigh effective enforcement of [the law]. When the [government] demonstrates a likelihood of ultimate success, a countershowing of private equities alone would not suffice to justify [emergency injunctive relief]." *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1083 (D.C. Cir. 1981). *See also National Audubon Society v. Department of Navy*, 422 F.3d 174, 201 (4th Cir. 2005) ("Where the harms of a particular injunctive remedy outweigh the benefits, a court may decline to adopt it."); *Hampton Univ. v. Accreditation Council for Pharmacy Ed.*, 611 F.Supp.2d 557, 565 (E.D. Va. 2009) ("where an injunction is asked which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff.") (quoting *Weinberger*, 456 U.S. at 313).

## IV. Conclusion

"[R]egulations of gun sales do not substantially burden Second Amendment rights merely because they make it more difficult to obtain a gun." *Nordyke*, 2011 WL 1632063, at *8 (citing *Heller*, 554 U.S. at 626–27 ("[N]othing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms.").

---

F.3d 207, 217 (4th Cir. 1993)). At a bare minimum, if the Court is inclined to grant relief here, it should be limited to the named individual plaintiffs. *See id.* ("An injunction covering [plaintiff] alone adequately protects it from the feared prosecution. Preventing the [government] from enforcing [the challenged regulation] against other parties in other circuits does not provide any additional relief to [plaintiff].").

Plaintiffs' flimsy showing is plainly insufficient to qualify them for the extraordinary relief they seek—the wholesale invalidation of longstanding and critical public-safety laws and regulations. If the Court were to grant the expansive relief requested, important police powers of three separate sovereigns will be disrupted, not to mention the potential impact on the public of allowing handguns to be shipped directly to District residents. "This is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights." *Masciandaro*, 638 F.3d at 475.

For the foregoing reasons, the District respectfully requests that this Honorable Court deny plaintiffs' motion for preliminary injunction. A proposed Order is attached hereto.


DATE: July 8, 2011                    Respectfully submitted,


                                      _____/s/ Thomas L. Koger_____
                                      THOMAS L. KOGER, VSB No. 40086
                                      Assistant Attorney General
                                      Office of the Attorney General for the District of Columbia
                                      Equity Section I
                                      441 Fourth Street, N.W., 6th Floor South
                                      Washington, D.C. 20001
                                      Telephone: (202) 727-4170
                                      Facsimile: (202) 751-5908
                                      E-mail: thomas.koger@dc.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of July 2011, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing to the following:


Alan Gura
GURA & POSSESSKY PLLC
101 N. Columbus Street
Suite 405
Alexandria, VA 22314
alan@gurapossessky.com


Lauren A. Wetzler
Stephen J. Obermaier
U. S. Attorney Office
2100 Jamieson Avenue
Alexandria, VA 22314
anna.cross@usdoj.gov


Catherine Crooks Hill
George W. Chabalewski
Attorneys for W. Steven Flaherty
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
cchill@oag.state.va.us


By:   /s/ Thomas L. Koger
      THOMAS L. KOGER, VSB No. 40086

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
_____
                                        )
MICHELLE LANE, et al.                   )
                                        )
                Plaintiffs,             )
                                        )
         v.                             )        Case No. 1:11-cv-00503-GBL-TRJ
                                        )
ERIC HOLDER,     et al.,                )
                                        )
                Defendants.             )
_____)
```

<u>ORDER</u>

Upon consideration of the Plaintiffs' Motion for Preliminary Injunction, the Memoranda of Points and Authorities in Support thereof and in opposition thereto, the entire record herein, and it appearing that the relief should be denied, it is hereby:

ORDERED, that the Plaintiffs' Motion for Preliminary Injunction be, and hereby is, DENIED, for the reasons stated on the record in the hearing of this matter held on July 15, 2011.

SO ORDERED.

DATE: _____          _____
                                       GERALD BRUCE LEE
                                       United States District Judge